UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 2:09 CV 336<br>) |
| AUTO TECH AUTOMOTIVE INC., et al., | )<br>)<br>) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on the motion of defendants James and Sherri Eblings and Auto Tech Automotive, Inc. (DE # 25), joined by defendant Fred Weich (DE # 28), to abstain from exercising jurisdiction over this case due to the pendency of proceedings in Indiana state court, and a motion brought by defendants Darryl and Brenda Wiederhold to dismiss the claims against them for similar reasons (DE # 18). For the reasons set forth below, the motions are denied.[1]

## I. BACKGROUND

The story of this case begins with a piece of real property located at 454 West Lincolnway in Valparaiso, Indiana, owned by the Iva Merimon Trust ("the Trust"). (Compl. ¶ 36.) The property was insured by defendant Travelers Insurance Company ("Travelers"). (Compl. ¶ 37.) The Trust leased a portion of the land to defendant Fred

---

[1] As stated at the end of this opinion, Weich's motion is granted to the extent that he sought simply to join the Eblings' and Auto Tech's motion, but denied as to the request for abstention.

Weich, who then entered into a sublease with defendants James and Sherri Ebling. (Compl. ¶ 33.) The Eblings operated an automobile repair business called Auto Tech Automotive, Inc. ("Auto Tech") on the premises. (Compl. ¶ 14.) The Eblings purchased a "Bis-Pak" insurance policy from Acuity, a Mutual Insurance Company ("Acuity"), the plaintiff in this case, to cover (amongst other things) property damage and legal liability. (Compl. ¶ 17.)

On November 29, 2004, a fire occurred at Auto Tech. (Compl. ¶ 18.) The fire caused damage to the Auto Tech facility, vehicles, and other personal property. (Compl. ¶ 19.) The Eblings, on behalf of Auto Tech, made a claim under their Bis-Pak policy for property damage allegedly arising from the fire. (Compl. ¶ 20.)

In 2005, James Ebling was charged with arson and insurance fraud in relation to the fire and the claim the Eblings filed with Acuity. (Compl. ¶ 22.) James Ebling was acquitted of arson, and the insurance fraud charge resulted in a hung jury. (Compl. ¶ 24.) Acuity investigated Auto Tech's claim for the fire and concluded that James Ebling, as an agent of Auto Tech, intentionally caused the fire. (Compl. ¶¶ 21, 27-28.) Accordingly, Acuity determined that coverage for all claims arising out of the fire was excluded by the policy and denied coverage in July of 2009. (Compl. ¶¶ 30-31.)

In the aftermath of the fire, a number of lawsuits were filed in Indiana state court. Weich, who subleased the property to Auto Tech and the Eblings, filed suit for damages to the leasehold interest in state court against James Ebling, Auto Tech, and

Acuity ("the Weich suit").² (Compl. ¶ 33; DE # 28-3.) That action has been stayed in light of the present proceedings in federal court. (DE # 29-2.) The Wiederholds, sublessees of another portion of 454 West Lincolnway, filed suit for damage to their personal property against Auto Tech and Acuity ("the Wiederhold suit").³ (Compl. ¶ 34.) William Day, the owner of a pick-up truck that was destroyed by the fire, has filed suit against James Ebling and the Trust ("the Day suit").⁴ (Compl. ¶ 35.)

On October 14, 2009, the present suit was filed in federal court by Acuity, who has named Auto Tech, the Eblings, the Wiederholds, Weich, Day, the Trust, and Travelers as defendants ("the federal suit"). (Compl. at 1.) Acuity seeks a judgment declaring that it is not required to pay any claims under the policy, nor does it owe any duty to defend or indemnify Auto Tech or the Eblings with respect to any third-party claims arising from the fire. Specifically, Acuity argues that the following contractual exclusions apply under the circumstances: "dishonesty or criminal acts" on the part of the insured bars coverage for physical loss or damage to the covered property (Count I); a "dishonest or illegal act" by the policy owner bars coverage for direct physical loss or damage to contractor's equipment (Count I); coverage is not provided for sums that the

---

² *Fred Weich v. James Ebling, et al.,* Porter County Super. Ct. No. 64D02-0611-CT-10701.

³ *Darryl and Brenda Wiederhold d/b/a Luxor Auto Sales v. Auto Tech Automotive, Inc. and Acuity Insurance Company*, Porter County Super. Ct. No. 64D05-0508-CT-6887.

⁴ *William Day v. James Ebling and Iva Marimon Trust,* Porter County Super. Ct. No. 64D04-0501-SC-281.

3

insured becomes legally obligated to pay as damages when the damage was "expected or intended" by the insured (Count II); and "concealment or misrepresentation of a material fact" or "fraud" on the part of the insured bars coverage for "any loss or damage" (Count III). Acuity also seeks a declaration that it is entitled to rescind the Bis-Pak policy due to fraud in the application, because Auto Tech allegedly failed to disclose facts about a previous burglary at Auto Tech and resulting losses claimed with another insurer (Count IV).

In response to the claims set forth by Acuity, Travelers filed a counterclaim in the federal suit seeking a declaration that, under the terms of the Eblings' policy with Acuity, a limit of $1,000,000 is applicable to the potential claims for property damage that may arise from the fire, not $100,000 as Acuity claims. (DE # 20.)

On November 24, 2009, Auto Tech and the Eblings filed suit in Indiana state court against Acuity for breach of the Bis-Pak policy, as well as against Bartholomew & Sons, Inc. ("Bartholomew"), the insurance agent that handled the Eblings' application for their Acuity insurance policy ("the Auto Tech suit").[5] (DE # 25-1.) Auto Tech alleges that Bartholomew engaged in negligence or intentional misconduct in failing to disclose to Acuity a previous burglary and the amount of resulting loss. That suit has also been stayed in light of the present proceedings. (DE # 42-2.)

---

[5] *Auto Tech Automotive, Inc., James Ebling, and Sherri Ebling v. Acuity, a Mutual Ins. Co. & Bartholomew & Sons, Inc.*, Porter County Super. Ct., No. 64D05-0911-CT-12024.

The Eblings and Auto Tech have moved for the court to abstain from exercising jurisdiction over this case due to the pendency of the Auto Tech suit in Indiana state court. (DE # 25.) Weich joined the motion. (DE # 28.) Similarly, the Wiederholds filed a motion (without much substance or support) to dismiss this action due to the pendency of the Wiederhold suit in Indiana state court. (DE # 18.)

## II. LEGAL STANDARD

The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "By its terms, the Declaratory Judgment Act gives the district court the discretion to declare the rights of the litigants; it explicitly says that upon a proper application, the district court 'may' declare the party's rights. The Supreme Court has consistently understood this language as discretionary[.]" *Medical Assurance Co., Inc., v. Hellman,* 610 F.3d 371, 378-79 (7th Cir. 2010) (citation omitted). In other words, the Declaratory Judgment Act "created an opportunity, rather than a duty" to consider claims seeking declaratory judgments. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995). "[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.*

"[T]he classic example of when abstention is proper occurs where . . . solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision Healthcare, Inc., v. Preferred One Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). Abstention cases involving parallel state proceedings are often referred to as involving the *Wilton/Brillhart* doctrine, named after the two primary Supreme Court cases on the subject. *Wilton*, 515 U.S. at 289-90 (district court acted within its bounds in staying action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942) (setting the standard for discretion where parallel state proceedings are pending).

For purposes of the *Wilton/Brillhart* analysis, "[t]wo actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *Envision*, 604 F.3d at 986. However, "the mere pendency of another suit is not enough in itself to refuse a declaration." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 695 (7th Cir. 1995). In determining the existence of parallel proceedings sufficient to warrant a stay, "the federal court should consider (among other matters) whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a

6

declaratory judgment in another forum or at another time." *Id*. The court addresses the *Zavalis* factors, and "other matters" intricately related to them, in turn below.

III. **DISCUSSION**

   A. *Factor #1: Whether Suits Present Distinct Questions*

Parsing out the similarities and differences between the questions presented in the state and federal suits involves a bit of mental gymnastics. The court begins with Counts I - III of Acuity's federal suit. The central factual issue of these claims is, put simply, whether James Ebling started the fire at Auto Tech. Under Acuity's theory, the resolution of this factual question determines the outcome of the central legal issue of Acuity's claim: whether Acuity is required to pay under the Bis-Pak policy.

Counts I-III of Acuity's federal suit overlap with some of the claims presented in the state suits. For example, in the Auto Tech suit filed in state court, Acuity is accused of breaching the Bis-Pak policy by not paying the Eblings or Auto Tech for claims filed under the policy. Acuity's defense to this claim is that it not required to pay under the policy because James Ebling started the fire, thus triggering exclusions in the policy. (*See* DE # 29-2 ¶ 5.) The Wiederholds' and Weich's claims against Acuity in state court also overlap with Counts I-III of the federal suit; if Ebling started the fire and exclusions apply relieving Acuity of any duty to pay under the Bis-Pak policy, Weich's and the Wiederholds' claims against Acuity lose their merit. In sum, the aforementioned claims in the Weich, Wiederhold, and Auto Tech state court suits involve substantially same central issues as Counts I-III of the federal suit. However, the federal suit is arguably

7

broader in scope because it appears to seek a determination of whether Acuity must pay at all under the policy. In contrast, each state suit plaintiff seeks a determination of whether Acuity must pay that particular plaintiff.

In the remaining claim of Acuity's federal suit, Count IV, Acuity seeks a declaration that rescission of the Bis-Pak policy is appropriate because Auto Tech and/or the Eblings allegedly failed to disclose facts about a previous burglary and resulting losses claimed with another insurer. A similar issue is presented in the Auto Tech suit; Auto Tech has sued Bartholomew, the Eblings' insurance agent, for mishandling its application for insurance by failing to disclose to Acuity the same facts regarding the previous burglary and claimed losses. Though these claims are not identical, they spring from common factual roots.

Despite these congruities, the remaining claims spread out amongst the various lawsuits do not overlap as neatly. Travelers' claim against Acuity is asserted in the federal suit as a counterclaim, but no state court equivalent appears to exist. Further, the Wiederholds have named Auto Tech in their state lawsuit. Perhaps if Acuity has no duty to the Wiederholds to pay for any damages caused by the fire, the Wiederholds might be able to pursue recovery from Auto Tech independent of the Bis-Pak policy. Such a claim does not exist in the federal suit. The same situation exists with regard to the Weich suit; Weich has named James Ebling and Auto Tech in his state suit, and Weich could presumably seek recovery from them if Acuity is not required to pay under the Bis-Pak policy, but such a claim has not been made in the federal suit. Day,

who seeks to recover for the loss of a pickup truck in the fire, has sued only James Ebling and the Trust, and these claims have not been made in the federal suit.

In sum, the claims presented in the federal suit overlap with some, but not all, of the issues presented in the state court suits. Similarly, one claim presented in the federal suit–Travelers' counterclaim–has no state court equivalent. As matters stand now, no matter what this court decides to do, there will be "leftover" claims straying away from the pack. Thus the first factor of the *Zavalis* analysis does not weigh strongly in favor of or against retaining jurisdiction.

### B. *Factor #2: Whether Actions Involve Identical Parties*

The second *Zavalis* factor is whether the state and federal actions involve identical parties. 52 F.3d at 695. The answer is, quite simply, no. No state action involves a set of parties identical to this federal action. All of the entities in the federal suit are involved in one or more of the state law suits with the exception of Travelers, which is not a party in any of the state lawsuits brought to this court's attention. Further, all of the parties involved in the state court suits are parties in the present federal suit, with the exception of the Eblings' insurance agent, Bartholomew.

In their briefs, the parties have debated whether Bartholomew could be added to this federal action as a third-party defendant without divesting the court of diversity jurisdiction. If Bartholomew could be added, it would simplify matters immensely because every individual and entity from every lawsuit mentioned herein would be a party in the same lawsuit. The Seventh Circuit has made clear that district courts

9

presiding over diversity cases have ancillary jurisdiction over claims brought by an original defendant against a third-party defendant arising out of the "same occurrence or transaction" as the original claim, even if the third-party defendant is non-diverse. *Miller v. Long-Airdox Co.*, 914 F.2d 976, 977 (7th Cir. 1990). Given the similarity between Count IV of Acuity's complaint and the Eblings' and Auto Tech's state law claim against Bartholomew, there is no doubt that this standard is met in this case. This fact weighs in favor of exercising jurisdiction over Acuity's claim.

### C. *Factor #3: Usefulness of Action and Avoidance of Piecemeal Litigation*

The third factor the court should consider in determining whether to abstain from exercising jurisdiction over Acuity's action is "whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation." *Zavalis*, 52 F.3d at 695. In this case, going forward with the declaratory action in federal court would serve a useful purpose in determining an issue relevant to at least four different lawsuits. By retaining jurisdiction over the question of Acuity's liability under the Bis-Pak policy, the court would ensure that the question would be resolved in a context where all individuals and entities that might be interested in the outcome of that question could easily be collected under the umbrella of one proceeding. Further, Travelers' counterclaim, which involves a different but related issue of interpretation of the same Bis-Pak policy and which is already underway in this

lawsuit, would be resolved as well. The court's ancillary jurisdiction would presumably allow the claims presented in the state courts to be presented here.

Further, two of the three state lawsuits involving claims overlapping with Acuity's declaratory judgment claims have already stayed their proceedings. Thus, in at least two of the state court cases, this court would not be interfering with litigation that has significantly progressed in state court by exercising jurisdiction over this matter. These facts suggest that exercising jurisdiction is preferable to leaving the question of Acuity's liability to be resolved in a smattering of lawsuits in different courts that each involve some, but not all, of the interested parties.

### D. *Factor #4: Availability of Comparable Relief*

The last factor enumerated in *Zavalis* is whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time. *Zavalis*, 52 F.3d at 695. No concerns have been voiced by Acuity that it would be entirely unable to seek declaratory judgment in another forum if the court did not exercise its jurisdiction to hear this case. Indeed, the issue of Acuity's liability under the Bis-Pak policy has been raised (though in piecemeal fashion) in numerous state lawsuits. In other words, the issues Acuity has raised will likely be addressed by *some* court, even if not this one. For the sake of argument the court assumes that this factor weighs in favor of abstention.

*E.     Summary*

In sum, the myriad of lawsuits related to the fire at Auto Tech present something of a legal and procedural nightmare. Whether this court abstains or not, the cornucopia of claims that have sprung up as a result of the fire will involve multiple lawsuits, and inefficiencies will necessarily occur. Not all of the claims and parties involved in the state court suits are in front of this court, and not all of the claims and parties involved in this case are involved in the state court proceedings. Because there is no clean overlap, this court is put in the awkward position of choosing the lesser of two evils to ensure maximum utility of the judiciary, both state and federal, while promoting fairness and avoiding piecemeal litigation.

An examination of the issues and claims presented in the various suits suggests that maintaining jurisdiction over the federal suit, where all of the relevant claims could be addressed, and where all of the relevant entities and individuals could be made parties, is preferable to multiple courts deciding some of the same issues. By exercising jurisdiction over this claim, the court will ensure that a question of interest to numerous parties is decided in one forum where all of those parties could be heard on the subject. Finally, though Acuity would not necessarily be denied a forum to air its grievances if *this* court did not hear its case, the inefficiencies described above that would be created if this court abstained from hearing Acuity's claim outweigh any lack of harm to Acuity.

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES** Auto Tech's and the Eblings' motion for abstention. (DE # 25.) The court also **DENIES** the Wiederholds' motion to dismiss. (DE # 18.) As for Weich's motion to join the motion to abstain, Weich's motion is **GRANTED** to the extent that Weich sought permission to join Auto Tech's and the Eblings' motion, but **DENIED** to the extent that Weich sought absention. (DE # 28.)

The stay on briefing regarding Acuity's motion for summary judgment is now **LIFTED**. (DE # 39.) Any responses to Acuity's motion for summary judgment must be filed by March 18, 2011. Acuity's reply, if any, must be filed by April 6, 2011.

**SO ORDERED.**

Date: February 4, 2011

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT